R. C. CHRISTIAN, Administrator of the Estate of Albert M. Ball, Deceased, Appellee, v. THE CITY OF AMES, IOWA, Appellant.

**Master and servant:** CONTRIBUTORY NEGLIGENCE. An experienced electric lineman, who was killed while changing certain wires from one poll to another at the direction of his superior, though knowing that the wires were charged with a heavier voltage than their insulation justified, could not be held guilty of contributory negligence as a matter of law, where he had reason to believe that his superior had directed that the current should be turned off, as was the custom, before the work was commenced.

**Same:** FELLOW SERVANT: WHEN VICE-PRINCIPAL. Where a superior fellow servant, though aiding in the work of changing electric light wires from one poll to another, was charged with the duty of directing that the current be turned off before the work was commenced, he was a vice-principal with respect to that duty and not a fellow workman, the performance of which duty was due from the master and could not be delegated.

**Same:** SUBMISSION OF ISSUES. Where the petition contained several specifications of negligence, all of which were susceptible of being reduced into the single charge of directing decedent to replace certain live electric wires of high voltage and insufficient insulation, no prejudice arose from reducing the number of specifications in submitting the issues.

**Same:** ASSUMPTION OF RISK: INSTRUCTION. Where the court clearly instructed that defendant could not be held liable unless its own negligence from which the accident resulted was proved, the full benefit of the proposition that decedent was engaged in a hazardous occupation, that the accident was one of the risks and not attributable to the negligence of defendant, was secured.

*Appeal from Story District Court.*—HON. C. E. ALBROOK, Judge.

SATURDAY, NOVEMBER 28, 1914.

ACTION for damages for alleged negligence which caused the death of plaintiff's intestate. There was a verdict and

judgment for the plaintiff, and the defendant appeals.—
*Affirmed.*

*C. H. Pasley* and *G. A. Underwood,* for appellant.

*E. H. Addison* and *E. M. McCall,* for appellee.

EVANS, J.—The name of the decedent was Albert M. Ball.
He was in the employ of the defendant city at the time of the
accident which resulted in his death.   As such employee he
was engaged in the work of repair and maintenance of the
defendant's electric light plant.   He was engaged, at the time
of the accident, in removing the wires of a transmission line
from one line of the poles to another.

The defendant city maintained a transmission line con-
sisting of two wires between its plant downtown and the Agri-
cultural College, a mile or two distant.    Over this line a
twenty-four-hour service was ordinarily maintained.   The line
was insulated for six hundred volts, but actually carried a
voltage of four thousand four hundred.   While handling these
wires, or one of them, for the purpose of changing the loca-
tion of the same from one pole to another, the decedent was
instantly killed by a charge of electricity.

The charge of negligence against the city is predicated
upon the claim that the city failed to turn off the current of
electricity at the time the decedent and others were working
upon the wires, and that the decedent was thereby exposed to
the danger of handling a live wire of high voltage insufficiently
insulated.

I. It is urged on this appeal that the plaintiff failed to
prove decedent's freedom from contributory
negligence, and that a verdict, therefore,
ought to have been directed in its favor.

1. MASTER AND
SERVANT: con-
tributory neg-
ligence.

The decedent was a man of experience in his work, having
been engaged with the defendant city for seven years.   It is
urged, therefore, that he knew as much about the danger to

which he was exposed as any agent of the city could know, and that he thereby assumed all of the risk or was guilty of contributory negligence.

Ball was under the immediate direction and supervision of one Haverly, and Haverly was under the supervision and direction of one Linebaugh, the manager of the plant. Linebaugh had directed Haverly to have the work done at some convenient time. Haverly had fixed the time and place when and where it should be begun. There was evidence of a usual practice by Haverly to telephone request to the plant to turn off the current from a line when he proposed to put men to work upon it. This practice was not followed at the time in question, and the accident resulted very soon after the beginning of work. The jury found, in effect, that the decedent did not know that the current was on. It necessarily found, also, that he was not negligent in relying upon the performance by Haverly of his usual practice.

The trial court instructed the jury that, if the decedent knew, or ought to have known, that the electric current had not been turned off, he was guilty of contributory negligence, and that his administrator could not recover. There is no direct evidence upon the question of his knowledge at this point. But the circumstances of the case are quite significant, and are all consistent with the jury's finding. We are of the opinion, therefore, that the defendant was not entitled to a directed verdict on the ground of contributory negligence.

II. It is also urged by the defendant that Haverly was only a fellow servant of the decedent, and that his negligence could not be imputed to the city. Haverly was a fellow servant and aided in the work to which the decedent was called. But he was charged also with the duties in which the decedent had no share. These were the duties of a vice principal, the performance of which was due from the employer to the employee. The rules pertaining to the duties of an employer in such a case are quite elementary, and we need not dwell upon them.

2. SAME: fellow servant: when vice-principal.

The duty of the master to furnish to a servant a reasonably safe place to work is nondelegable. When it fails, the failure is attributable to the master, so far as the injured servant is concerned.

III. Complaint is made of the instructions of the trial court as to its statement of the issues. It is said that the pleadings were substantially copied, and that the statement of the issues was thereby rendered prolix and confusing. It is further pointed out that the petition contained nine specifications of negligence, and that the trial court, in a later instruction, withdrew all of the specifications, save four. Because the trial court actually submitted only four specifications of negligence, it is contended that the other five ought not to have been recited at all. We had occasion to consider this question in some fullness in *McDivitt v. Des Moines Railway Co.*, 141 Iowa, 689. See, also, *Canfield v. Railway Co.*, 142 Iowa, 658; *Stephens v. Brill*, 140 N. W. 809.

3. SAME: submission of issues.

In the statement of issues, the point to be aimed at is clearness of statement. Any method is to be commended which will lay the issues clearly before the jury.

In the *McDivitt* case, *supra*, we held that where issues were about to be withdrawn by the trial court at the close of the evidence, and where such issues had been stated to the jury by counsel in opening statements, and where more or less evidence had been introduced in their support, it might be an aid to clearness for the court to state the rejected issues as preliminary to the statement withdrawing the same. In the case before us there was little room for confusion as to an understanding of the issues.

As already indicated, the charge of negligence was predicated upon the broad ground of exposing the decedent to the danger of a live wire of high voltage insufficiently insulated. This broad ground was amplified and split into nine specifications. Each specification, however, was brief. One specification charged the failure to furnish a safe place to

work; another a failure to turn off the electric current; another a failure to sufficiently insulate; another a failure to furnish proper appliances for the safe handling of a live wire; another a.failure to warn the decedent of the presence of the electric current; another a failure of the defendant to inspect and discover the dangerous condition, etc. The trial court in its instructions reduced these nine specifications to four in number. It will be seen that all the specifications rested upon the one broad ground, and that they could have been reduced to one broad specification without eliminating therefrom anything of substance. This was all that was done by the trial court in reducing the number to four. Nothing substantial was eliminated. It was a mere matter of reducing the verbiage.

The evidence was very brief. It is all contained in less than fifteen pages of the abstract. Upon the whole case, it is very clear to us that the jury could not have misunderstood the nature of the negligence charged, whether it was stated in nine specifications or in four. Four was doubtless better than nine; and one perhaps would have been better, even, than four.

IV. Finally it is urged very earnestly that the decedent was engaged in a hazardous business, and necessarily assumed its risks, and that the accident in question was one of its risks, and that it was not attributable to any negligence of the defendant. The trial court gave to the defendant the benefit of full emphasis upon the proposition that the defendant could not be held liable unless its own negligence was proved, and unless the accident was the result thereof. No complaint is made of the instructions in this regard. This leaves nothing for review at this point.

4. SAME: assumption of risk: instruction.

The defendant appears to have had a fair trial. We find no reversible error. The judgment must therefore be—
*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.