Bissell, J.,
delivered the opinion of the court.
On the 6th of July, 1892, Stery executed a general mortgage on the fixtures and stock in trade of his bakery to Mrs. Hale. The mortgage was foreclosed in the ensuing August, the property sold and the proceeds applied by Mrs. Hale to her own use. Stery brought this suit to cancel the mortgage and recover the damages resulting from the foreclosure.
The circumstances of the transaction are somewhat peculiar. The ease lacks some of the elements of an actual or an active fraud perpetrated by the holder of the instrument. The real gravamen of the suit is found in the allegations which charge Stery’s incapacitj'' to execute the instrument. He alleges he was drunk and had no knowledge of the making of the instrument or of any of the matters attending the transaction. This is the only fraud charged. He does not aver that Mrs. Hale in any manner induced his situation and admits it was purely voluntary. The only aiding fact is the asserted lack of consideration to support the transfer. The only possible doubt respecting the accuracy of the judgment springs from this circumstance. Mrs. Hale denied the alleged *166 incapacity and stated that Stery was indebted to her in a sum much beyond the amount of the mortgage. ' Had this question been tried, the case would have been free from the slightest embarrassment; but counsel stipulated to try the case on the single question of the legality of the mortgage. The court intimated, at the conclusion of the testimony, that a decree should be drawn expressly reserving to Mrs. Hale the right to maintain a suit on any claim which she might have against Stery. This was not done, but the judgment specifically canceled the mortgage. During the progress of the trial, Mrs. Hale testified generally concerning the account between her and Stery, gave the sources of the funds which she claimed to have loaned him, and attempted in a general way to state it. Stery denied the indebtedness. There was no evidence about it save that given by these parties aside from proof of some admissions by Stery of the amount of the claim and the genuineness of the security. If this in any wise tends to prejudice the plaintiff in error, it proceeds from her failure to insist on an adjudication respecting this debt. Stery produced much evidence to show that, about the 4th of July, he started on a protracted spree, which lasted until some time in August. The evidence which he offered .tended to show that he was drunk for several weeks from the commencement of bis dissipation, and during all that time was totally incapacitated to transact business or to understand what he was about. Mrs. Hale admitted his intoxication, but put the date at wliich he became incapacitated to transact business subsequent to the 6th of J uly, when he gave the mortgage. Her own evidence and that of the witnesses which she produced tended in the same direction. That Stery commenced to drink before the 6th is conceded by both parties, the sharply defined issue being made as to the time at which he became so drunk as to be rendered incapable to understand and know what he was about. The evidence was very conflicting. The court found with Stery. He held him entitled to the cancellation of the mortgage, found the value of the property to be $1,00Q, and adjudged *167 him damages in that sum. Assuming the accuracy of. the court’s conclusions respecting the facts, there is no question concerning the rightfulness of the judgment. It was early decided under the civil law, according to Pothier, “that drunkenness, when it goes so far as absolutely to destroy the reason, renders a person in this state, so long as it continues, incapable of contracting, since it renders him incapable of consent.” Pothier on Obligations, part 1, chap. 1, sec. 1, art. 4.
The earlier decisions of the common law were hot thus lenient to the foibles and misfortunes of those who executed contracts while in a state of inebriety. The later decisions, however, seem to have pretty generally adopted the rule of the civil law, and wherever suits have been brought in equity to cancel and set aside instruments which have been executed at a time when the contracting party was incapable of consent, the courts have been liberal in extending their protection. Motives of public policy seem to be the ground upon which the chancery courts have based their decisions. Whatever reasons are assigned, they all reach the same result, and never hesitate to set aside contracts which have been entered into under circumstances which lead the court to believe their enforcement would be unjust and inequitable. No inflexible rule has been adopted. Regard is always had to the attendant facts, to the matter of the consideration, to any advantage which has been derived from the agreement, and, in general, to all those things which in equity are regarded as determining factors in estimating the fairness of the agreement and the good faith of the parties. Crane et al. v. Conklin et al., 1 N. J. Eq. 346; Duncan v. McCullough, 4 Serg. & Rawle, 482; Caulkins v. Fry, 35 Conn. 170 ; Johns v. Fritchey et al., 39 Md. 258.
These cases are sufficient to illustrate the general rule which prevails in the courts and the limitations usually put on the application of the doctrine. If the defendant had set up an indebtedness between herself and Stery, and insisted on the trial of that issue and the reduction of his damages to the extent of the outstanding debts, another and a difieren t *168 question might have been presented. The only thing which we consider and decide is the rightfulness of the judgment, which we treat as based on the fact that Stery was incapable of contracting when lie signed the mortgage. If this fact be conceded, the judgment is right. He was found to be without consenting capacity. He had a right to have the instrument canceled and to recover any damages resulting from its enforcement. The state of the account between the parties was undoubtedly a matter of legitimate evidence,as tending to show the presence or absence of a consideration for the instrument, and as tending to support on the one side the contention that the transaction was fraudulent in law, and on the other its perfect fairness and freedom from an effort or desire to overreach the contracting party. We do not intend to intimate that this would have prevented the cancellation of the instrument. .Undoubtedly, if Stery was indebted to Mrs. Hale, and the debt was due at the time the suit was brought, she might, if the matter was a legitimate subject of consideration in that kind of a suit, have reduced the damages. This we do not decide. We simply concur with the trial court in its conclusions respecting the” execution of the mortgage. Whatever may be our own convictions in the premises as the result of an examination of the record, we are bound, under the well settled practice, to accept the conclusions of the trial judge when we find in the record sufficient evidence on which to rest them. It would be impossible to disturb the judgment without a violation of this settled rule.
Since the court decided the case on conflicting testimony, and its judgment is supported by evidence in the record and is in harmony with the law, it must be affirmed.

Affirmed.